IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TRACY LYNN P.,

        Plaintiff,

    v.                              Civil Action No.
                                      6:18-CV-0582 (DEP)
COMMISSIONER OF SOCIAL
 SECURITY,

        Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF

DOLSON LAW OFFICE          STEVEN R. DOLSON, ESQ.
126 North Salina Street
Suite 3B
Syracuse, NY 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH      OONA M. PETERSON, ESQ.
United States Attorney         Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks

judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g) are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on September 17, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

*[signature]*
David E. Peebles
U.S. Magistrate Judge

Dated: September 19, 2019
Syracuse, NY

3

|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **NORTHERN DISTRICT OF NEW YORK** | |
| 3 | | |
| 4 | **TRACEY P.,** ) | |
| 5 | Plaintiff, ) **CASE NO.: 6:18-CV-582** | |
| 6 | vs. ) | |
| 7 | **COMMISSIONER OF SOCIAL** ) **SECURITY,** ) | |
| 8 | Defendant. ) | |
| 9 | | |

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HON. DAVID E. PEEBLES**
**TUESDAY, SEPTEMBER 17, 2019**
**SYRACUSE, NEW YORK**

**FOR THE PLAINTIFF:** (by telephone)
  Law Offices of Steven R. Dolson
  By:  Steven R. Dolson, Esq.
  126 North Salina Street, Suite 3B
  Syracuse, New York  13202

**FOR THE DEFENDANT:**
  Social Security Administration
  By:  Oona M. Peterson, Esq.
  26 Federal Plaza, Room 3904
  New York, New York  10278

**THERESA J. CASAL, RPR, CRR, CSR**
Federal Official Court Reporter
445 Broadway, Room 509
Albany, New York  12207

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT – NDNY*

*T.P. v. Commissioner of Social Security - 18-CV-582*

1  THE COURT: Okay. All right. Well, I have to let
2  that be the last word. Thank you both for excellent
3  presentations.
4  I have before me a request for judicial review of
5  an adverse determination by the Commissioner of Social
6  Security pursuant to 42, United States Code, Section 405(g).
7  The background is as follows:
8  The plaintiff was born in February of 1971, she
9  is currently 48 years old. She was 40 years of age at the
10 time of the alleged onset of her disability in December of
11 2011. Plaintiff lives alone with a dog in a trailer in
12 Rome, New York. Plaintiff has a GED and has taken some
13 limited college courses. It's unclear from the record as to
14 whether she has taken one or two years of college courses;
15 588 is one of the sources for that information. Plaintiff
16 has a driver's license but does not possess an automobile.
17 She stands five foot two in height and weighs 179 pounds.
18 In terms of work history, plaintiff worked from
19 August of 1998 until December of 2011 or 2012, in a Walmart
20 distribution center loading and unloading trucks and often
21 carrying and lifting as much as 100 pounds. She left that
22 position after she suffered an injury and made a Workers'
23 Compensation claim. Most likely, she left in December 2011,
24 the injury occurred on December 16, 2011, and there's
25 reference at 49 to 50 and 588 of the administrative

*UNITED STATES DISTRICT COURT - NDNY*

transcript to that effect, although at page 269 she lists her employment as extending to December 2012.

Physically, plaintiff suffers from a back injury which results in and causes bilateral leg pain and numbness. She underwent surgery in February of 2013 by Dr. Rudolph Buckley, who performed a bilateral hemilaminectomy and foraminotomy at L-3/L-4, L-4/L-5, and L-5/S-1. That's at 315 to 316 of the administrative transcript.

Since then, she has attempted to control her pain through the use of a spinal cord stimulator and epidural injections, including in March of 2000 -- I can't read my notes -- 15 and April of 2015. That's at 507 and 544 of the administrative transcript. She also had an injection in June of 2013, at 235. She uses a cane to get up and also to climb stairs. She also suffers from COPD and is required to take oxygen and use an inhaler.

Mentally, plaintiff testified that she was at one point on an antidepressant. There aren't any significant records to demonstrate ongoing treatment or medication for that condition.

Medically, plaintiff is on oxygen; Gabapentin, is or was; Cebriva, an inhaler; Nycinta; Hydrocodone; Baclofen; Mirtazapine; Duoxeline; Symbicort; Merphin; Ventolin, and Ibuprofen. She has had those in the record. Several test results and X-rays of her spine performed in May of 2013

after her surgery, that's at page 428, demonstrating mild disk space narrowing at L-4/L-5, mild hypertrophic changes at multiple levels and mid-leg length discrepancy along with minimal scoliosis.

On April 5, 2013, Magnetic Resonance Imaging, or MRI, testing of plaintiff's lumbar spine was performed. There were degenerative changes noted at disks L-3 through S-1 with a bulge of the disks at those and other levels. I'm summarizing, and that's from 430 and 431 of the administrative transcript.

On November 1, 2013, there was additional MRI testing, which again, at page 498, revealed diffuse bulging at multiple levels but no disk herniations, no large disk herniations, no evidence of spinal stenosis.

On February 20, 2015, plaintiff underwent a CT of her lumbar spine with contrast and the resulting impression was multi-level mild to moderate disk space narrowing and multi-level disk bulging, the most prominent occurring at L-3/L-4, where there is a large disk bulge that has become more prominent when compared with the 2013 MRI studies. And that is reported at 574 and 575 of the administrative transcript.

The evidence in the record is somewhat equivocal as to whether the plaintiff smokes. She was formerly a smoker and indicated that she smoked since 1990 as much as

1   one pack per day.  That's at 596.  At 820, it was suggested
2   she smokes one-half a pack a day.  At 1213, there's some
3   indication that she may have quit; she's referred to as a
4   former smoker.  Plaintiff has also used marijuana in the
5   past.  That's at 1213.
6           In terms of activities of daily living, plaintiff
7   is able to dress, bathe, take her -- let her dog out.  She
8   can cook, do dishes, do laundry, she goes on Facebook, she
9   watches television, sometimes goes out with girlfriends.
10  She can shop, although she has to lean on a cart after 20 to
11  25 minutes, and her sister does help her with her shopping.
12  That's from her testimony as well at 590 and 597 of the
13  administrative transcript.
14          Procedurally, plaintiff applied for Title II
15  disability insurance benefits on March 3, 2015, alleging
16  onset date of December 11, 2011.  A hearing was conducted by
17  Administrative Law Judge Kenneth Theurer, on February 17,
18  2017.  The Administrative Law Judge issued a decision on
19  March 23, 2017, that was unfavorable to the plaintiff.  The
20  opinion of the Administrative Law Judge became a final
21  determination of the agency on April 6, 2018, when Social
22  Security Administration Appeals Counsel denied plaintiff's
23  request for review.
24          In his decision, ALJ Theurer applied the familiar
25  five sequential steps for determining disability.  He

6
*T.P. v. Commissioner of Social Security - 18-CV-582*


concluded at step one that plaintiff had not engaged in substantial gainful activity between December 11, 2011, the alleged onset of her disability, and December 31, 2016, her date of last insured status.

At step two, Administrative Law Judge Theurer concluded that plaintiff suffers from severe impairments that impose more than a minimal limitation on her ability to perform basic work activities, including a disorder of the spine (lumbar post laminectomy syndrome and sciatica), as well as Chronic Obstructive Pulmonary Disease, which I will refer to as COPD.

He then concluded at step three that plaintiff's condition did not meet or medically equal any of the listed presumptively disabling conditions set forth in the Commissioner's regulations, specifically addressing 1.04 and concluding that the required findings to support that listing were not met.

After engaging in the two-step analysis of plaintiff's subjective claims at step four -- before addressing step four, the Administrative Law Judge concluded that plaintiff retains the residual functional capacity to perform sedentary work with several significant restrictions, at page 22 of the administrative transcript. Applying that RFC determination at step four, ALJ Theurer concluded that plaintiff is incapable of performing her past

relevant work based on the exertional requirements of that position as a warehouse worker.

At step five, ALJ Theurer noted that if plaintiff were capable of performing a full range of sedentary work, Rule 201.27 of the Medical Vocational Guidelines set forth in Commissioner's regulations would direct a finding of no disability. Because she is not able to perform the full range of sedentary work, ALJ Theurer consulted a vocational expert and based on the testimony of that expert concluded that plaintiff is capable of performing in three positions, including as a document preparer, as an order clerk in food and beverage and as an addresser; therefore, because there are sufficient numbers of positions in the national economy in those three areas, concluded the plaintiff is not disabled at the relevant times and, therefore, ineligible for the benefits sought.

As you know, my task is limited, the standard of review that I apply is extremely deferential. I must determine whether correct legal principles were applied and the result is supported by substantial evidence which is to find that such evidence of a reasonable mind would find sufficient to support a conclusion.

The first argument raised is based on SSR 16-3 and it concerns the Administrative Law Judge's handling of plaintiff's claims of her symptomatology. The SSR was

*T.P. v. Commissioner of Social Security - 18-CV-582*

enacted in March 2016, revised in October 2017; it superseded, as counsel for the plaintiff correctly points out, SSR 96-7p, which many people refer to as the credibility two-step determination. The two steps required are well familiar to those who practice in this area. First, the SSR requires that the ALJ consider whether there's an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a reoccurrence of symptoms, such as pain; second, once an underlying physical or mental impairment that could reasonably be expected to produce an individual's symptoms is established, then the ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the individual's ability to perform work-related functions.

      In this case, the Administrative Law Judge did engage in the two-step process, a situation which, in my mind, distinguishes this case from the case cited by the defendant, where the Administrative Law Judge completely failed to make the determinations of the first inquiry. I have to say, and I have to agree with counsel, that the treatment of plaintiff's subjective symptomatology could have been more clearly laid out by the Administrative Law Judge. I understand the pressures they're under, the volume that they deal with, but what I look for is a statement as

*THERESA J. CASAL, RPR, CRR*
*UNITED STATES DISTRICT COURT - NDNY*

1  to what the claims are and a statement as to the first step
2  and then the second step and robust discussion of the
3  factors that are required to be considered under SSR 16-03p.
4        That having been said, I reviewed very carefully
5  the Administrative Law Judge's determination that step two
6  analysis considered the other evidence in the record, the
7  many medical reports, plaintiff's statement and nonmedical
8  sources, including the activities of plaintiff's daily
9  living. The nonmedical evidence was discussed at 20 to 21.
10 And although it is marginal, I believe that the rationale of
11 the Administrative Law Judge was sufficiently stated to
12 permit meaningful judicial review.
13       The second argument raised by plaintiff is --
14 concerns Dr. Wulff's medical source statement. That
15 statement is somewhat inconsistent with the RFC
16 determination. The medical source statement was signed on
17 January 24, 2017, and appears at 1239 to 1241 of the
18 administrative transcript. The evidence shows that
19 Dr. Wulff saw plaintiff once in 2013 and then again in
20 December of 2016. At 1213, Dr. Wulff states at the outset
21 of his report of that visit, quote, patient is here for
22 initial evaluation and management and a second opinion,
23 closed quote. In my view, this does not make Dr. Wulff,
24 although he's an admitted specialist, a treating source. I
25 think that *Mussaw* is distinguishable. In that case, the

1   case that is cited by plaintiff, the medical source
2   statement was from January of 2010. The plaintiff in that
3   case was examined in December of 2009 and again in February
4   of 2010. The doctor prescribed medications in February 2010
5   and was consulted by a social worker regarding the
6   plaintiff. In this case, although there is mention of
7   medical medicine -- or management, there's no indication
8   that plaintiff -- that Dr. Wulff did that. He recommended
9   an enhanced lumbar MRI be performed and there's no record of
10  it ever having been performed or any further treatment by
11  Dr. Wulff.
12           Even if Dr. Wulff was properly regarded as a
13  treating source, I believe that under the treating source
14  rule, his opinion would be treated as noncontrolling and
15  particularly if he considered the six factors set forth in
16  20 CFR, Section 404.1527(c)(2)(i) and (ii). It's a check
17  the box form with little explanation. The ALJ did consider
18  Dr. Wulff's specialty. He indicated that plaintiff's
19  prognosis was good and that she was capable of performing a
20  low stress job.
21           The RFC in this case is supported by Dr. Cole's
22  consultative opinion, with the exception of climbing ramps
23  and stairs, which is not required for any of the three jobs
24  according to the DOG descriptions of those positions. The
25  ALJ is also consistent with Dr. Mathews, at 819-822, he said

1  that plaintiff is capable of sedentary jobs.  Dr. Friedman,
2  at 842 to 847, indicated plaintiff can perform all
3  activities of a sedentary position without restriction.
4  Dr. Kirkpatrick, at 855 to 859, who indicated plaintiff can
5  perform in clerical level work if she can change positions
6  frequently, avoid lifting more than 10 pounds and avoid
7  bending and squatting, which is also not required for any of
8  the three jobs.
9         There was an indication of the sit/stand option
10 and that was accommodated in the RFC determination.  The RFC
11 specifically provides that the claimant alternate from
12 sitting to standing or vice versa twice an hour for not more
13 than 5 minutes while on task.  The vocational expert
14 testified that, in his opinion, based on his experience, the
15 three positions identified would meet that criteria.  There
16 was also some indication of reaching, occasional reaching,
17 based on Dr. Wulff or Dr. Cole's opinions.  The vocational
18 expert did testify that there was at least one position
19 available in the national economy that would meet that
20 criteria.
21        So, I believe that although I wished there was a
22 better explanation of the credibility determination, I think
23 that the analysis that the ALJ went through beginning at
24 page 22 and continuing on through 25 provides enough
25 analysis that the Court is able to make a meaningful

1  judicial review of the analysis of plaintiff's subjective
2  complaints.  So I will grant judgment on the pleadings to
3  the defendant, affirm the Commissioner's determination and
4  dismiss plaintiff's complaint.
5        Thank you both for excellent presentations.  I
6  hope you have a good day.  Goodbye.
7        MR. DOLSON:  Thank you, Judge.
8        MS. PETERSON:  Thank you.
9        (This matter adjourned at 11:38 AM.)
10       - - - - -

```
                                                                    13
 1              CERTIFICATION OF OFFICIAL REPORTER

 2

 3

 4         I, THERESA J. CASAL, RPR, CRR, CSR, Official

 5    Realtime Court Reporter, in and for the United States

 6    District Court for the Northern District of New York, do

 7    hereby certify that pursuant to Section 753, Title 28,

 8    United States Code, that the foregoing is a true and correct

 9    transcript of the stenographically reported proceedings held

10    in the above-entitled matter and that the transcript page

11    format is in conformance with the regulations of the

12    Judicial Conference of the United States.

13

14           Dated this 17th day of September, 2019.

15

16           /s/ THERESA J. CASAL

17           THERESA J. CASAL, RPR, CRR, CSR

18           FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

                    THERESA J. CASAL, RPR, CRR
                 UNITED STATES DISTRICT COURT - NDNY
```